IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Brian E. Smithberger, | Case No. 3:10 CV 2413 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Ernie Moore, et al., | |
| Defendants. | |

### INTRODUCTION

In this civil rights action, *pro se* Plaintiff Brian Smithberger, a former state prisoner, brings suit against Dr. Janet Wolery and Ed Castaneda, employees of the Ohio Department of Rehabilitation and Correction ("Department"). Plaintiff alleges that Defendants violated his constitutional rights when they failed to provide him with a dental crown, pursuant to Department policy, while he was incarcerated. Now pending before the Court is Defendants' Motion for Summary Judgment (Doc. No. 28). Plaintiff failed to file a timely opposition. For the following reasons, Defendants' Motion is granted.

### BACKGROUND

Plaintiff is a former inmate at Marion Correctional Institution ("MCI"), a prison operated by the Department. Plaintiff was released in January 2011. *See* www.drc.ohio.gov. In May 2010, while still incarcerated, Plaintiff visited MCI's dentist, Dr. Janet Wolery, regarding a broken tooth (Doc. No. 2 at 4). Plaintiff explained his injury to Dr. Wolery's assistant, who x-rayed the tooth (*id.*).

After examining Plaintiff's tooth herself, Dr. Wolery notified Plaintiff the tooth needed to be capped, but she was unable to do so as such procedures are "against policy" (*id*. at 4–5). Dr. Wolery explained to Plaintiff that he needed to wait until his release to address the problem (*id*. at 4).

Unsatisfied with Dr. Wolery's response, Plaintiff filed several informal complaints with MCI Hospital Administrator Ed Casteneda alleging Dr. Wolery refused to provide proper treatment (*id*. at 5; Doc. No. 28-2). Casteneda investigated and found Dr. Wolery correctly followed prison policy, prompting Plaintiff to file a slew of grievances with MCI Institutional Inspector R. D. Smith (Doc. No 2 at 5; Doc. No. 28-1). After Dr. Wolery's actions were once again deemed proper, Plaintiff appealed to the Department's Chief Inspector (Doc. No. 2 at 5). The appeal, which included charges that Casteneda and Smith negligently failed to investigate Plaintiff's complaints, was denied (*id*.; Doc. No. 28-1).

Plaintiff next filed this action under 42 U.S.C. § 1983 against Dr. Wolery and Ed Casteneda (collectively, "Defendants") (Doc. Nos. 2, 10).[1] In particular, Plaintiff alleges Defendants denied him adequate dental care in violation of his Eighth Amendment rights (Doc. No. 2 at 4–5). Defendants now seek summary judgment, arguing Plaintiff failed to exhaust his administrative remedies and that Defendants are entitled to qualified immunity (Doc. No. 28).

## DISCUSSION

**Standard of Review**

Pursuant to Federal Civil Rule 56(a), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id*. When considering a motion for summary judgment, the court must draw all inferences

---

[1] The Complaint also named as Defendants R. D. Smith, MCI Warden Maggie Beightler, and ODRC Director Ernie Moore, but all claims against these Defendants have been dismissed (Doc. Nos. 2, 10, 22).

from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

### Qualified Immunity

Although Defendants raise two arguments in their Motion, this Court finds the issue of qualified immunity dispositive and therefore finds it unnecessary to address Defendants other argument. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation . . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "Through the use of qualified immunity, the law shields 'government officials performing discretionary functions . . . from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). Once raised, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006).

In determining whether a defendant is entitled to qualified immunity, the court makes two inquiries: (1) "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right[,]" and (2) was the right "clearly established" to the extent that a reasonable person in the officer's position would know that the conduct complained of was unlawful. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). Although *Saucier* mandated that these questions be addressed in order, that requirement has since been relaxed. *See Pearson*, 129 S. Ct.

at 818 ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.").

This Court previously held that Plaintiff's Complaint adequately alleged a constitutional violation. However, that is only half of Plaintiff's battle. Even assuming he can meet the first *Saucier* prong, he must still demonstrate the constitutional right was "clearly established," and that is where Plaintiff's case falls short.

"In inquiring whether a constitutional right is clearly established, we must 'look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits.'" *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993) (quoting *Daugherty v. Campbell*, 935 F.2d 780, 784 (6th Cir. 1991)). With regard to the second step,

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 640 (citations omitted). "This standard requires the courts to examine the asserted right at a relatively high level of specificity[,]" and "on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendant['s] position could have believed that his conduct was lawful . . . ." *Cope v. Heltsley*, 128 F.3d 452, 458-59 (6th Cir. 1997) (citations and internal quotation marks omitted). In other words, "[t]he right must have been 'clearly established' not just in an abstract sense, but in a 'particularized' sense." *Id.* (citing *Anderson*, 483 U.S. at 640).

The parties have not directed this Court to any decisions in this Circuit addressing the constitutionality of a refusal to provide crowns or dental caps to prisoners. This Circuit has held that while prison officials may not deny or unreasonably delay a prisoner's access to medical care, prisoners have no constitutional right to a particular type of treatment. *See, e.g., Jones v. Martin*, 5 F. App'x 434 (6th Cir. 2001). Furthermore, a difference of opinion between a prisoner and staff about medical treatment does not state a claim for relief. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976). In fact, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel Estate of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004).

Here, Plaintiff was provided dental treatment when he saw Dr. Wolery, who examined Plaintiff's tooth and x-rays. She then advised Plaintiff he needed a cap on his tooth which, according to Department policy, she could not provide. The Department policy is relevant here because it highlights whether it should have been apparent to Dr. Wolery she was violating Plaintiff's rights. *See Hope v. Pelzer*, 536 U.S. 730, 743–44 (2002) (noting that prisoner guards' disregard for prison policy, supported view that reasonable officials should have realized their conduct violated the Eighth Amendment). Department policy does indeed prohibit Department dentists from providing crown and bridge procedures (Doc. No. 28-3 at 6, ¶ 21), so a reasonable official in Dr. Wolery's position would not believe she was violating Plaintiff's rights by following that policy and denying his request. The same can be said for Defendant Castaneda, who did not reverse Dr. Wolery's decision when requested by Plaintiff, as Castaneda was subject to the same Department policy.

Because Defendants each provided Plaintiff with some dental treatment and were following a mandatory Department policy, this Court cannot say that the contours of any right Plaintiff may have had were "sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] that right."

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. No. 28) is granted and this case is dismissed.

IT IS SO ORDERED.

                                                               s/ *Jack Zouhary*
                                                           JACK ZOUHARY
                                                           U. S. DISTRICT JUDGE

August 17, 2011